all right here to hear this honorable appellate court of the second district is now open pursuant to adjournment the honorable and bradley target centers island please be seated your honor is the first case in the morning call 2 11 on 974 people who say the lawyers of christopher a.k on behalf of the appellant mr clutcher hamill on behalf of the people mr matthew schmidt are you ready to proceed you may proceed when you're ready. Good morning your honors counsel may please the court my name is clutcher hamill and I represent the defendant appellant christopher petty the issue in this case concerns the bare minimum quantum of evidence that police officer can have before it can be said that they have a reasonable suspicion of that crime is afoot such that they would warrant an investigatory stop pursuant to terry versus ohio the facts in this case are are straightforward two officers are at a street corner at the intersection of north avenue about 83 in elmhurst they look over into a gas station parking lot at that corner they see the defendant and another individual exit their cars engage in termed a hand-to-hand exchange oh they couldn't see anything that was exchanged and then re-enter their cars and based on that and the officer's training that which taught the officers that this this conduct was consistent with a narcotics transaction based on that alone the officers can engage affected a terry stop what was it what was the business of the officers at that corner on that night they were simply on routine patrol they they were not in surveillance or anything like that they just happened to be there and happen to see this happen so the question is was that enough was that benign conduct plus the officer's training teaching them that benign this type of benign conduct is consistent with the narcotics transaction sufficient to warrant a terry stop and the answer to that question is clear in the case law there's quite a bit of guidance from this this court and other appellate districts that says clearly no that is not sufficient so you're you you propose that this is an ocampo position basically the police officers had a hunch exactly okay and how is it not similar to n-ray fr well the difference between this case in ocampo and n-ray fr is is in the officer's testimony in fr that added a third factor beyond his training and beyond the the benign conduct and that was the officer's knowledge of the street corner in question was a high crime area the officer had personally witnessed i think i believe it was a dozen or maybe two dozen narcotics transactions himself and also i think it's important in fr compared to this case in ocampo is the officer in fr gave a detailed description of what a typical narcotics transaction at that corner looked like and was able to describe what he saw the defendant do and was able to articulate why that was what the defendant did was consistent with what a typical narcotics transaction was so so that's you know that's that far is a good illustration of what can be present in a case to add to the officer's training and the benign conduct that does push it over the you know to the level of suspicion and that's what's lacking here and you know the other case that was discussed in the briefs moralis is the same same kind of situation is different that's a different factor but in moralis you had benign conduct you had the officer's training and you had furtive conduct by the defendant before there was a terry stop you know after the defendant noticed the officers but before he was stopped he quickly started to walk away and began to try to hide something in his hand well your opponent submits in the brief that that uh your client began driving away when the officers turned on their lights so wouldn't that be similar um to the moralis case well there's two problems with the state's argument on that point uh the first problem is is that the what they're considering they're calling furtive conduct was in pulling away after the officers had affected the terry stop and even i believe in ocampo the defendant did uh try to flee or acted furtively after the the officers tried to stop him and this court said you couldn't consider that because you can't use what happened after the stop to justify the stop in this inception and i think the second problem with the state's argument is it really doesn't it isn't borne out by the facts by the testimony of the officers because the officers testified he had started to pull out before they before they turned on their lights they pulled in they actually blocked the other car they didn't pull up to his car although his car is probably nearby they pulled to the other car and he did continue to pull out until the officer verbally told him to stop and the second the officer verbally told him to stop he stopped so there wasn't really a much of an attempt to escape here and certainly nothing nothing akin to moralis where the defendant was actually actively trying to hide things from the officers we put the lights on and then he continued to drive though correct right but they but there was another car and they pulled actually pulled up and blocked the other car in at the gas station they so so you know he was it wasn't obvious it's hard to say from the testimony but it doesn't seem like it would have been obvious that he would have known that they were pulling him over too at the time because they were parked in front of the other car whether it's obvious or not wouldn't that be in the eye of the beholder i mean that's your conclusion right right but the point is is that you can't say it's furtive because because they pull in they block another car into the parking lot and his car was already driving out and it just all he did is not stop for a second before they sold him to stop but you always stop when there's a police car with siren and lights flashing well if if that car is stopping if the police car is stopping a different car it's not clear from the testimony where his car was and really it was probably nearby but it's not clear from the testimony that they were stopping his car i guess is the point and even if he was it was after the stop you know if they were stopping his car then they had obviously affected the tariff stop and you can't use what he did after they affected the tariff stop to justify the tariff stop did the trial court mention this furtive activity for lack of a better term um in its ruling i don't believe the judge did not that i recall what is our standard of review here you have a denial of a motion to suppress then you have stipulation at a bench trial is our standard of review manifest weight or is it de novo or is it both well it's it's bifurcated it's it's you you review the factual findings for manifest weight and you and uh the ultimate conclusion review de novo and since the facts aren't really in dispute here it's just the ultimate conclusion was were these facts enough the review on that question is de novo um didn't the court in ocampo distinguish that that their facts from morales based on the the act the observation of seeing something delivered they well they they did they did mention that yes uh there in two things about that first of all you know can't i think that that the um the between what happened in ocampo is is that the only thing they couldn't see his hand was because that he was obscured by the car door uh everything else in ocampo would have suggested a hand-to-hand transaction and in this case the officers weren't able to articulate any that they did see anything actually be delivered in between the two hands the the fact they didn't they didn't describe any object they couldn't say the shape color anything about it they couldn't say whether the defendant handed something to the other individual or the individual handed something to the defendant or both or neither so in this case it's really the same as ocampo and what was really important ocampo is not that they saw a hand touch another hand it's just that they saw benign conduct that that their training taught them was was um consistent with a narcotics transaction but that there was nothing else to to support that conclusion the officers here did testify to the transfer of an object they well they said that there was a hand-to-hand exchange they could not describe any object at all there's no right there was a transfer of something but they did testify to a transfer of something and the trial court apparently bought that um and we have to of what they saw they didn't see the object whatever it was they didn't see it well they knew it wasn't a handshake well they did yeah they didn't believe it was they knew two hands went together and they thought something got exchanged but they didn't see any objects and that's the same as ocampo they didn't see any objects in ocampo the difference between ocampo in this case and the other cases is this other factor that you know whether there was something added on to to make it to make it a reasonable suspicion and based on our camp although isn't it important that that this was purely by coincidence that they saw this occur as opposed to being at a stakeout so i mean we could sit here all day and talk about what we saw in the hand or whether the police saw an item or didn't see an item or saw him shake hands or something exchanged hands isn't that a huge factor here that this was not a stakeout it absolutely is it absolutely is that that this this is yeah not a stakeout there's no information here that that that this gas station is any more likely than any other place in the world to be the place for a narcotics transaction at that time uh yeah then that's actually you know campbell they weren't staking out that gas but they were saying the other house you know down the street from that gas station so there was at least that but here there's not even that so this is just two people who happened to to you know have this hand-to-hand transaction um you know and actually going back to you know the difficulty we're having with um whether or not there was something passed you know past that the officer saw and the problem here is that the officer's testimony wasn't so vague the office all they said was there was a hand-to-hand transaction they didn't say anything else they didn't say they didn't describe how the hands went to it went and touched each other how they were able to tell that an object that they didn't see went from one hand to another and you remember the standard reasonable articulable suspicion they were supposed to articulate that and they didn't in this case so you have just this vague testimony that and that we saw something happen and we thought it was and it sounded like what we trained to you know what it sounded like something we're trying to tell is a narcotics transaction and that's it and that's that's what's what's lacking here but the hand-to-hand transaction that testimony stands uncontroverted the police officers gave that conclusion in their testimony whether they should or should not have is not our issue it was subject to cross-examination no one questioned any further on it we have to correct i well we right but we have to we also have to put it to the view to the standard of reasonable articulable suspicion and whether or not the words hand-to-hand transaction articulates something that's suspicious and my you know my my position is not it's not without something else something else to to help you know to help it along so um and so like i said in this case there is no you know no no information there was a high crime area no information that the officers were on a stakeout no information that the officers had any any reason to believe that this defendant was one individual involved in narcotics and no furtive movements by the defendant so this case is like Ocampo it's not like FP or Morales and under Ocampo i would ask your honors to to reverse the defiance conviction outright unless your honors have any further questions thank you counsel good morning your honors counsel my name is Matthew Schmidt i'm with the appellate prosecutor's office and i will be representing uh the people on this matter now what we need for a terry stop is articles articulable suspicious facts that create only a reasonable suspicion it's not a probable cause standard it simply has to be something that's more than a mere hunch now what we had here was two officers as was previously stated merely out of patrol when they noticed suspicious activity there was a Pontiac that was already pulled into the gas station i saw another car come in the Cadillac which was driven by the defendant the two individuals quickly got into their cars exchanged something didn't talk at all took less than 10 seconds got immediately back into their cars and the defendant took off now maybe someone forgot their keys it's possible your honor however uh as well my kids forgets his keys i go to meet me at the gas station for the keys or whatever they forgot it you know and i just saw them i'll just hand it to them i'm not consistent with at least some innocent activity it is consistent with some innocent activity however um and people be paying the appellate court ruled that reasonable suspicions can arise from things that are not criminal in their own right it's the circumstances surrounding the exchange presumably if you were handing a key to your child you'd say hello you probably wouldn't make a furtive hand-to-hand transaction and immediately separate and get back in your car nothing about the in the record about this being a furtive hand-to-hand transfer to your honor i would i would however disagree with counsel that defendant did act furtively after the exchange took place he said he claims that there's no evidence in the record for how close the cars were what one of the officers clearly stated we pulled up next to the defendant's car at a perpendicular angle to his back rear side passenger as he was pulling away with our lights on and when he didn't stop one of the officers the driver actually had to get out of the car and stop and as several of you mentioned that's suspicious if you don't stop when someone is trying to you see flashing lights pull up next to your car a reasonable thing to do and not suspicious thing to do would be to stop at least and see if the officer is trying to pull you over or perhaps pull over the car that's next to you but even if he's blocking just the car that was right next to him he's still pretty much at least a few feet away how do you distinguish ocampo um i would the person got into the car and they kind of leaned back maybe they took something out of their pocket maybe they didn't you couldn't see if he took anything out of his pocket you couldn't see their arms because it was blocked um and i think that's a key difference they couldn't see anything being exchanged could be a person getting into a car and just leaning back to be more comfortable and here they actually like this case okay el campo was where they came upon this if you're not if there's no reason to suspect criminal activity you're not in a high crime area it's merely a hunch otherwise how do you overcome that well your honor i think what a camera says and what other cases say is that the amount of criminal activity in an area is one factor to be considered among many it's not necessarily dispositive for example in people v legends or leggings a fourth district case um they were actually pulled over people that were sitting in a drug house that they were on stakeout to watch uh one car pulled up behind another two individuals got out one car and got into another car and that court ruled that simply because they were in high crime area without more without seeing an exchange or seeing anything that happened it wasn't enough for a terry stop so we have the exact opposite here we have something that they saw but no high crime area whereas in that case we had a high crime area and nothing exchanged correct your honor so you're submitting then it's just a factor it's one factor among many including the fact that there's an exchange including that there was little to no talking that they got immediately back into their cars which are all things that officer laughlin testifies it as part of his training in the drug unit was extremely consistent with a hand-to-hand transaction so it's actually it's referred to as a hand-to-hand transaction the entire is something that is very similar to experiences in his experience as a drug officer as justice burke pointed out couldn't it also be consistent with a number of innocent scenarios maybe they're exchanging tickets to a bulls game it's possible there as there there could be many innocent explanations however courts have stated that just because it looks innocent doesn't mean that is an officer's training can elevate seemingly benign conduct into a reasonable uh reasonable concept for a stop isn't there the other side of training though that teaches police officers that you need something more than a hunch yes your honor um actually one of the cases when a supreme court case referred to in leggings uh brown v texas was where an officer merely saw people standing around an alley and those people look suspicious and he went and he talked he did a terry stop on them um and they said no he can't do that because there's no suspicion it was just a hunch it's just these people look weird in this case we have more than a hunch we have people getting out of their cars exchanging something getting right back in and leaving immediately and leaving even when they see a car a police car with its lights flashing pull up right next to them in the parking lot do you believe that ocampo was correctly decided well i always have to err on the side of the prosecution your honor do you believe that ocampo was based on the facts and ocampo was set forth in that opinion do you believe that that was correctly decided well i i bow to the wisdom of this court your honor um i'm very diplomatic i appreciate it thank you um so i would say that as right as much wise than me i'm yes it was correctly decided but i think the difference here is that we saw an exchange the police officers saw something being passed between people in a very suspicious way didn't the court kind of assume there was something transferred in ocampo though it seemed like the trial court at least uh seemed to assume that there was something passed with judge mccallis if i'm not mistaken um in the car based on the activity of people going for their in their pants apparently going in the pants pocket and pull something out well i think the court assumed that maybe he did pull something out of his pocket but you can pull anything out of your pocket and it doesn't necessarily mean that he gave the driver something as you said you can't see anything in the car so here we have the hand-to-hand exchange observed by both officers one officer with training that shows that told him that this were extremely suspicious circumstances this was a distinctive drug type transaction you could transfer the critical distinction in this case i believe it's one of them yes your honor that they actually saw something being given to each other um and as just started said there's no contradiction of this uh they both officers stated they saw something they weren't able to the guy just handed him a big bag of cocaine i was able to observe a large bag of cocaine being handed from defendant to the other person i don't think we'll be here yeah but but other than the actions that they saw that what they perceived to be in exchange other than that they had no other reason to suspect criminal activity other than the other than what they saw prior to what they saw they had no reason to suspect that there was any criminal activity afoot there wasn't a high primary there was no information from an informant or anything like that isn't that what terry requires terry really requires articulable factors that raise uh reasonable suspicion something above a hunch um it doesn't require that you be on a stakeout it doesn't require that you have some sort of information it just requires that you see something that is suspicious enough to have you reason to stop and make a brief inquiry can we consider what happened after the police officer flipped the lights out on the squad car because that was i mean that was a show of authority wasn't it yes your honor however um and people be kipfer this court ruled that it's not that you can do that you can consider everything of it until the terry stop actually occurs when the defendant stops moving um people be kipfer was a guy that was walking around an apartment complex late at night the officer asked him a couple times to stop the guy kept walking this court said well you don't have to stop if you don't have to stop as well within your rights not to stop but you can consider everything up or do and including right before the stop actually occurs before the terry stop before the questions are asked before the defendant stops basically you're telling us if we accept your position that if a police officer observes a transcript that's enough you don't need a high crime area you don't need specialized or stake out that you're looking for this defendant or in this area you don't need any additional conduct you just need to see hand-to-hand exchange of something i wouldn't say that your honor i would say that when you see a hand-to-hand exchange where the people quickly get out of their cars don't say anything that's it but i mean then my point is that's all you got and you're telling us that when you see a transaction like that short duration where something is is exchanged and i'll i'll give you the additional factor that the police couldn't tell that it was something else couldn't tell it was keys couldn't tell it was you know six pack of beer yes sir you're combined with the defendant not heeding the sirens behind him is enough yes your honor do you agree with um with your opponent with respect to the standard of review yes your honor it's a manifest weight for any facts and then de novo review for the ultimate conclusion um i i don't think the facts are in doubt i think there's a stipulated bench trial as as just started to mention there's no real contradiction of what happened here um i think you have to give manifest weight to certain assumptions such that they did see something being passed back and forth that are inherent in the ruling um but the ultimate decision is to no vote yes your honor um i would argue that this case is more like morales uh where police officer appeared to see an exchange um the defendant walked away furtively with his hand cupped as if he were holding something and they immediately separated when they saw the officer come the officer stated that what he saw was essentially a drug a drug type transaction which is exactly what happened here but in morales the the guy was walking with his hands cupped and the officer was behind him correct he was able to see more clearly that in fact something was the exchange that was paraphernalia or drugs i believe it was a lighter of some sort i could be wrong on that but he just saw something that had been exchanged and something was being um and i think that's exactly what we have here we saw an exchange um the guy got into his car and started driving away and when he saw the police lights he did not stop um which indicates to me suspicious activity um unless there are any other questions i would urge this court to rule under uh morales and uh to uphold the ruling of the court below any other questions thank you thank you very much council do you wish to offer a reply can you begin by responding to the defendant saw the police lights and didn't stop right well apparently didn't stop immediately but there but there's first of all i i disagree with counsel that this was before the terrorist that was affected when the when the police officer pulls in with the lights flashing and and blocks the other car the terrorist has been has been affected and and at that point the defense what the defendant does that's a contradiction if you say that when police officer pulled in it stopped was affected if you can't then argue that your client didn't observe it and figured it wasn't about him it's one or the other well nor can my opponent argue that the stop wasn't quite effective but my client did furtively try to escape it well which is it in this one in this case well you're not sure because this police officer testimony was vague the at most it was a couple of seconds before the officer yelled stop to my trying to escape and there's no reason for the officers to believe he was trying to escape so and whether whether it was because he didn't see it whether it was because this stop had already begun we don't know because the officer's testimony didn't articulate that and and as soon as the burden was on the state they needed that that testimony to do that they wanted to use it to justify the stop and but i think you know what this case really boils down to is is what you know justice jordan was asking the state is is this you know one transaction one hand-to-hand transaction assuming that that's what it was is that alone with nothing else enough to to justify terry's stop and and you know you can come up with you know your honors have already come up with a couple hypotheticals could it be keys could it be uh bulls tickets could the idea essentially if you adopt the state's position and what that means is at any time two people agree in advance to be in a public place and exchange something and they do it without talking about having a conversation they are subject to a terry stop and that that would be that would be a ridiculous uh conclusion i think and and it would be it would be um in contrast to against that and he's asking us to follow morales can you distinguish morales from this the facts of this case sure the defendant's conduct simply was not as furtive as the defense and morales even if you can even if you do consider that he he rolled his car a few extra feet after the officer was pulled in it's still not the same as walking away cupping your hand and obviously hiding something from them and that's that's the difference when you act furtively act like you have something to hide then perhaps you create an unreasonable articulable suspicion but if you don't you don't and in this case it or in an example it's the simple rule is that is that a benign conduct plus officer training is not enough and you need something else and that's simply not here so unless your honors have any further questions i would ask that you remain here